# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**Consolidated for all purposes**

UNITED STATES OF AMERICA,

                Plaintiff/Respondent,

vs.

SAMUEL J. SINGLETON,                 CIV No. 01-1084 BB/LFG
CARLTON BIGGERS,                    CIV No. 01-1197 BB/KBM
CLARENCE R. SINGLETON,           CIV No. 01-1215 BB/WWD

                                  CRIM No. 96-411 BB

               Defendant/Movants.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      Movants Samuel Singleton, Carlton Biggers and Clarence R. Singleton each bring

Motions to Vacate, Set Aside or Correct Sentence, under 28 U.S.C. § 2255. [Doc. 1, CIV No. 01-

1084; Doc. 1, CIV No. 01-1197; Doc. 1, CIV No. 01-1215.] The three § 2255 petitions, which raise

similar issues and arguments, were consolidated under CIV No. 01-1084 BB/LFG for good cause on

principles of judicial economy and consistency [CIV No. 01-1084, Doc. 14], and the government filed

a consolidated Answer to the three petitions [Doc. 9]. Samuel Singleton filed a response to the

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

Answer. [Doc. 12.]  Carlton Biggers and Clarence Singleton each filed an "Addendum" to the briefs they initially filed.  [Docs. 17 and 18.]

2.       In 1996, a 28-count Indictment charged these three movants and 23 other defendants with conspiracy "distribute and possess, with intent to distribute one kilogram and more, the exact quantity being unknown, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance," in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 846 (United States v. Singleton, et al., No. CR 96-411 BB). [Doc. 9, Ex. 1, Count I.]  The indictment detailed alleged involvement of the movants in the conspiracy and linked each to quantities in excess of one kilogram of methamphetamine.

3.       In 1998,  each movant entered into a Fed.R.Crim.P. 11(e)(1)(C) plea agreement to Count I only (conspiracy), as part of a "package deal" involving a number of other co-defendants, some of whom were family members.  The government dismissed the remaining counts as part of the plea agreements.  Based on the charges and/or these movants' criminal histories,  they each faced longer periods of incarceration than the sentence they received as part of the plea deal.

4.       The three plea agreements expressly provide that each defendant/movant is pleading guilty to a "conspiracy to possess with intent to distribute more than one kilogram of a mixture or substance containing a detectable amount of methamphetamine" and that each defendant understands the minimum period of imprisonment for that crime is ten years, with a maximum of not more than life.  [Doc. 9, Exs. 5, 6 and 7.]

### *Samuel Singleton's Plea and Sentencing:*

5.       At Samuel Singleton's plea hearing on February 20, 1998, he stated: "I conspired with others to deliver the drug substance, but I have nothing to add as far as the amount, that 250 pounds.

That was pulled out of the air. There's no way possible." By way of further explanation, the Court asked Samuel Singleton if he "conspired with others to knowingly and intentionally distribute and possess with the intent to distribute one kilogram or more." Mr. Singleton responded: "Yes." [Doc. 9, Ex. 2, p. 11.]

6. The government stipulated to an offense level of 38. [Doc. 9, Ex. 10, ¶ 105.] Samuel Singleton was given a two level increase for his leadership role in the organization, although the Presentence Report states that he could have received a four level increase. He also was given a three point reduction for his acceptance of responsibility and assistance, for a total offense level of 37. [Doc. 9, Ex. 10, ¶¶ 107, 111, 112, 113.] His criminal history category at sentencing was I. The Pre-Sentence Report indicates that a number of additional increases to the offense level were applicable but that according to the Rule 11(e)(1)(C), he would not receive those increases. The parties agreed that the possible imprisonment range was 241 to 262 months. [Doc. 9, Ex. 2, p. 6.] On November 24, 1998, Samuel Singleton was sentenced to a period of 241 months (20 years, one month) and 5 years of supervised release. [Doc. 9, Ex. 13.]

### *Carlton Biggers' Plea and Sentencing*:

7. At Carlton Biggers' plea hearing on February 25, 1998, he stated "I conspired with others to distribute a kilogram or more of methamphetamine." [Doc. 9, Ex. 3, p. 15.]

8. The government and Mr. Biggers stipulated to a base offense level of 36. Mr. Biggers was given a two point increase for threatening a witness and a three point reduction for acceptance of responsibility and assistance. The total offense level was 33. The Presentence Report indicates that he could have been given a base offense level of 34 and a criminal history category of VI, as well as a statutory maximum sentence of life, but that due to stipulations with the government, he received

a criminal history category of III.  [Doc. 9, Ex. 12, ¶¶ 128, 129.]  The parties agreed that a sentence of 210 months (17 years, 6 months) was the appropriate disposition of the case.  [Doc. 9, Ex. 3, p. 7.]  On November 30, 1998, Mr. Biggers was sentenced to 210 months (17 years, six months) and 5 years of supervised release.  [Doc. 9, Ex. 15.]

### *Clarence Singleton's Plea and Sentencing:*

9.      At Clarence Singleton's plea hearing on February 25, 1998, he responded that he was guilty to the charge of knowingly and intentionally combining and conspiring to intentionally distribute and possess, with the intent to distribute, one kilogram and more of methamphetamine.  He also stated: "I conspired with other members of the conspiracy to traffic in a controlled substance." [Doc. 9, Ex. 4, p. 10.]

10.      The government stipulated to a base offense level of 38 and the parties agreed that a three level decrease was applicable for Clarence Singleton's acceptance of responsibility.  Mr. C. Singleton's criminal history category was III, and his adjusted offense level was 35.  The Presentence Report indicates that C. Singleton could have received additional increases but the government agreed to apply only those increases in accordance with the Rule 11(e)(10(C) stipulation.  [Doc. 9, Ex. 11, ¶¶ 2, 91-99.]  The parties agreed to a period of incarceration of 210 months.  [Doc. 9, Ex. 4, p. 6.] On December 8, 1998, C. Singleton was sentenced to 210 months and 5 years of supervised release. [Doc. 9, Ex. 14.]

### *Acceptance of Pleas; Motions to Withdraw Pleas and Appeal:*

11.      After the movants entered their pleas in early 1998, the district court issued its Acceptance of Guilty Pleas and Entry of Judgments on April 1, 1998.

12.     Each movant filed a motion to withdraw his plea [Docs. 1293, 1363, 1387 in CR No. 96-411], after the Tenth Circuit issued an opinion suppressing certain evidence, in <u>United States v. Sonya Evette Singleton</u>, 144 F.3d 1343 (10th Cir. 1998).  That opinion was vacated on July 10, 1998 and a rehearing en banc was ordered.[2]  The trial court proceeded to conduct hearings on the motions to withdraw pleas, and on September 24, 1998, the Court denied those motions.  [Doc. 1391 in CR No. 96-411.]  The movants were then sentenced.

13.     The movants appealed the district court's ruling denying their motions to withdraw pleas.  On April 24, 2000, the Tenth Circuit Court of Appeals affirmed the judgments.  [Doc. 9, Ex. 9.]  On October 22, 2000, the United States Supreme Court denied certiorari.

### § 2255 Motions:

14.     The movants raise a number of similar or overlapping issues in their § 2255 motions. All three argue that aspects of their cases violated the principle set forth in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 466 (2000).  Samuel Singleton and Carlton Biggers contend that <u>Apprendi</u> was violated by the failure to sentence them under 21 U.S.C. § 841(b)(1)(C).[3]  Samuel Singleton and Clarence Singleton both argue that leadership role enhancements were improperly applied under <u>Apprendi</u>.  Samuel Singleton asserts that he was sentenced under facially unconstitutional statutes, based on principles set out in <u>Apprendi</u>.

---

[2]On January 8, 1999, the Tenth Circuit, en banc, held that the government was not precluded from offering an accomplice leniency in exchange for truthful testimony, thereby disagreeing with the previous panel's decision.  <u>United States v. Singleton</u>, 165 F.3d 1297 (10th Cir.) (Singleton II), *cert. denied*, 527 U.S. 1024, 119 S.Ct. 2371 (1999).

[3]It appears that Clarence Singleton essentially used the same Memorandum of Law submitted by Carlton Biggers; however, C. Singleton apparently deleted or marked out the argument regarding alleged <u>Apprendi</u> violations.

15.     Samuel Singleton and Carlton Biggers contend that their First, Fifth, and Sixth Amendment rights were violated when government agents searched their cells and seized legal materials that were beyond the scope of the search warrant.  Clarence Singleton's supporting brief, which is almost identical to that submitted by Mr. Biggers, also contains this argument although C. Singleton's § 2255 motion does not identify this claim.  In addition, all three argue that they were provided ineffective assistance of counsel, based on several different reasons.  Finally, Carlton Biggers and Clarence Singleton contend that they did not voluntarily enter into their plea agreements.

### Apprendi Issues

16.     In <u>Apprendi v. New Jersey</u>, the United States Supreme Court held:

> that a defendant may not be sentenced to a term of imprisonment in excess of the statutory maximum based on 'sentencing factors' found by the court by a preponderance of the evidence.  A sentence that exceeds the statutory maximum based on such a finding violates a defendant's right to due process and a jury trial.  Before <u>Apprendi</u>, the type and quantity of drugs involved in a crime was a 'sentencing factor' to be determined by a judge by a preponderance of the evidence standard.

<u>United States v. Quary</u>, 2002 WL 226387 at *1 (10th Cir. Jan. 25, 2002) (internal citations omitted).

17.     Samuel Singleton argues at length that <u>Apprendi</u> must be applied retroactively to his sentence under the factors outlined in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).  [Doc. 2, pp. 7-15.]  The government did not respond to this argument.  Here, there is no need to analyze the question of retroactivity of <u>Apprendi</u> under <u>Teague</u>.  <u>Apprendi</u> "is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328, 107 S.Ct. 708 (1987).  The movants' convictions were "not yet final" until the United States Supreme Court denied certiorari in October 2000, after <u>Apprendi</u> was decided in June 2000. *See* <u>United States</u>

v. Rodriguez-Aguirre, __ F.3d __, 2002 WL 182117 at *1 (10th Cir. Feb. 6, 2002) (defendant's conviction became final when the Supreme Court denied certiorari).

18.     Samuel Singleton was sentenced under 21 U.S.C. § 841(b)(1)(B), and contends that both 21 U.S.C. §§ 841(b)(1)(A) and (B) are facial unconstitutional after Apprendi. [Doc. 2, pp. 22-28.]  Essentially, Mr. Singleton's argument is that the Court should not be permitted to make sentence-enhancing factual determinations by a preponderance of evidence in light of Apprendi.  The Tenth Circuit expressly rejected this argument.  United States v. Cernobyl, 255 F.3d 1215, 1219-20 (10th Cir. 2001); United States v. Heckard, 238 F.3d 1222, 1235-36 (10th Cir. 2001).  The Tenth Circuit reasoned that the Apprendi majority specifically avoided disrupting the federal courts' use of the sentencing guidelines, and that even after Apprendi, the trial court is empowered to make findings by a preponderance of the evidence to determine an appropriate offense level under the Sentencing Guidelines.  Id.  See also United States v. Mese, __ F.3d __, 2002 WL 339380 (10th Cir. March 5, 2002) ("[n]othing in Apprendi . . . compels us to conclude that 21 U.S.C. § 841 is facially unconstitutional") (citing Cernobyl, 255 F.3d at 1219)).  In so ruling, the Tenth Circuit joined other circuit courts that also have determined § 841 remains constitutionally enforceable even after Apprendi.  See, e.g., United States v. Candelario, 240 F.3d 1300, 1311 n.6 (11th Cir.), cert. denied, 533 U.S. 922, 121 S.Ct. 2535 (2001); United States v. Slaughter, 238 F.3d 580, 582 (5th Cir. 2000); United States v. Strachan, 5 Fed. Appx. 169, 2001 WL 208470 (4th Cir. Mar. 2, 2001), cert. denied, 122 S.Ct. 295 (2001).[4]

---

[4]Moreover, Mr. Singleton's reliance on United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000) is unavailing since that decision was reversed by United States v. Buckland, 277 F.3d 1173, 1187 (9th Cir. 2002). Contrary to Mr. Singleton's assertion, the Ninth Circuit explained that "[o]ur decision that the statute is not facially unconstitutional, of course, results in felicitous unanimity among the United States Circuit Courts of Appeal."

19.     Samuel Singleton and Carlton Bigger also argue generally that their sentences violate principles in Apprendi, that a jury should have been asked to determine, beyond a reasonable doubt, the "actual" amount of methamphetamine for which they each were responsible and that they should have been sentenced under 21 U.S.C. § 841(b)(1)(C) (0 to 20 years), rather than under 21 U.S.C. §841(b)(1)(A)(viii) (10 years to life).   They appear to contend that since they pled guilty to a "detectable amount of methamphetamine," this should have triggered sentencing under 21 U.S.C. § 841(B)(1)(C) – the catchall sentencing provision that defines penalties for offenses involving controlled substances where drug quantity has not been charged or referenced.  *See* United States v. Bridges, __ F. Supp. 2d __, 2002 WL 378175 at *3 (D. Kan. March 5, 2002) (discussing sentencing in accordance with the catchall provisions contained in § 841(b)(1)(C)).

20.     First, Apprendi is not implicated under these facts.  Tenth Circuit precedent limits Apprendi error to those situations where proof of a fact, other than the fact of a prior conviction, increases the penalty for a crime beyond the ***statutory maximum penalty*** provided for in the statute.  "As long as [a defendant's] sentence falls within the maximum penalty established by the statute, Apprendi does not foreclose consideration of drug quantities, or other factors, beyond the offense of conviction."  Mese, 2002 WL 339380 at *4 (*citing* United States v. Hishaw, 235 F.3d 565, 577 (10th Cir. 2000), *cert. denied*, 533 U.S. 908, 121 S.Ct. 2254 (2001)).  Indeed, the Tenth Circuit has repeatedly held that if the result of a plea agreement or a sentence is not greater than the statutory maximum sentence, Apprendi is not implicated.   United States v. Higgins, __ F.3d __, 2002 WL 373958 at *18 (10th Cir. March 11, 2002); Heckard, 238 F.3d at 1235-36; United States v. Lujan, 268 F.3d 965, 968-69 (10th Cir. 2001);  United States v. Thompson, 237 F.3d 1258, 1261-62 (10th Cir.), *cert. denied*, 532 U.S. 987, 121 S.Ct. 1637 (2001); United States v. Wilson, 244 F.3d 1208,

1215 (10th Cir.), *cert. denied*, 122 S.Ct. 186 (2001); United States v. Ratzlaff, __ F.3d __, 2002 WL 339373 at *2 (10th Cir. March 5, 2002); United States v. Beltran-Martinez, 27 Fed. Appx 953, 956, 2001 WL 1612072 (10th Cir. Dec. 18, 2001); United States v. Miles, 25 Fed. Appx. 773, 2001 WL 1580951 (10th Cir. Dec. 12, 2001); United States v. Dubois, 25 Fed. Appx. 764, 2001 WL 1573474 at *2 (10th Cir. Dec. 11, 2001). Under the facts of this case, each movant pled guilty to a conspiracy involving one kilo or more of a mixture or substance containing a detectable amount of methamphetamine. That subjected each to a minimum sentence of ten years and a maximum sentence of life under 21 U.S.C. § 841(b)(1)(A)(viii). Samuel Singleton was sentenced to 20 years and one month; Clarence Singleton and Carlton Biggers each were sentenced to over 17 years. Clearly, none of them were given a sentence that exceeded the statutory maximum of life imprisonment.

21. The facts in Lujan are very similar to those present in this case. In Lujan, the defendant pled guilty to conspiring to possess more than 50 grams of methamphetamine and was sentenced to 120 months of imprisonment under 21 U.S.C. § 841(b)(1)(A). Lujan, 268 F.3d at 968. The indictment alleged that the defendant's violation involved more than 50 grams of methamphetamine. Id. The Court explained that Apprendi had no application since the maximum penalty for that offense was life imprisonment, the defendant's sentence of ten years was well under the statutory maximum. Id. at 968-69.

22. Second, the movants' assertions that they pled guilty to only a "detectable amount of methamphetamine" is mistaken. The plea hearings and plea agreements are clear that these movants pled guilty to "conspiracy to possess with intent to distribute more than one kilogram of a mixture or substance containing a detectable amount of methamphetamine . . . ." [Doc. 9, Exs. 5, 6, 7.] The indictment also provides this same language. [Doc. 9, Ex. 1, p. 3.] A lengthy recitation of the overt

acts committed by movants in furtherance of the conspiracy contain additional allegations of specific amounts of methamphetamine. For example, on May 31, 1994, Clarence Singleton and a co-defendant allegedly possessed approximately nine pounds of methamphetamine they were transporting. On July 15, 1994, approximately two pounds of methamphetamine were picked up from Samuel Singleton. In February 1995, Samuel Singleton and Mr. Biggers brought eight pounds of methamphetamine to a residence in Roswell, New Mexico. [Doc. 9, Ex. 1, pp. 13-15.]

23. Third, the movants' argument that the Court was required to determine the exact purity of the mixture or substance is rejected. The 1998 version of 21 U.S.C. § 841(b)(1)(A)(viii) provided that 100 grams or more of methamphetamine, . . . or 1 kilogram or more of a mixture or substance containing a detectable amount methamphetamine . . . shall be sentenced to a term of imprisonment . . ." of not less than 10 years or more than life. The statute, therefore, expressly addresses the unlawful possession or distribution of a "mixture or substance" that contains a detectable amount of a controlled substance, in addition to possession, etc. of a pure form of the controlled substance. In addition, the Sentencing Guidelines provide that "the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(A); United States v. Killion, 7 F.3d 927, 934 (10th Cir. 1993), cert. denied, 510 U.S. 1133, 114 S.Ct. 1106 (1994).

24. After Apprendi, a trial court may not sentence a defendant under §§ 841(b)(1)(A) and (B) without the drug quantity being charged in the indictment. Under those circumstances, the defendant may be sentenced only under catchall § 841(b)(1)(C), which defines penalties for offenses involving controlled substances that are not quantified. United States v. Jackson, 240 F.3d 1245, 1248 (10th Cir.), cert. denied, 122 S.Ct. 112 (2001). Section 841(b)(1)(C) contains a statutory

maximum of twenty years confinement.  Here, however, the Court was not required to sentence the movants under § 841(b)(1)(C) because the indictment did reference drug quantity.  Further, each movant stipulated to a drug quantity of one kilogram or more at his plea hearing.

25.     To the extent that the movants argue the drug quantity was insufficiently specific in the indictment, the Tenth Circuit has rejected this argument.  "[I]t is only when drug quantity is used to enhance a sentence beyond the statutory maximum that it must be charged with specificity in the indictment." United States v. Hill, 23 Fed. Appx., 2001 WL 1544474 (10th Cir. Dec. 5, 2001) (*citing* Jones, 235 F.3d at 1236)).  Moreover, any argument by Clarence Singleton or Carlton Biggers that the Court violated Apprendi principles by not sentencing him under § 841(b)(1)(C) fails since neither sentence exceeded the maximum penalty under that statute.  *See* Thompson, 237 F.3d at 1262 (jury not required to find drug quantity where the sentence fell within the statutory maximum for "any quantity" under § 841(b)(1)(C)).

26.     The movants' Apprendi arguments fail for an additional reason.  By pleading guilty to Count I of the indictment, the movants waived any rights they had to have the jury determine a specific drug quantity.  Lujan, 268 F.3d at 969.  *See* United States v. Gonzalez, 12 Fed. Appx. 792, 795, 2001 WL 435241 at *2 (10th Cir. Apr. 30, 2001) (allegations of drug quantities set forth in indictment were proved beyond a reasonable doubt by the defendant's guilty plea, and therefore, the sentence did not violate Apprendi), *cert. denied*, 122 S.Ct. 305 (2001); Garcia v. United States, 2002 WL 42888 (S.D.N.Y. Jan. 11, 2002) (the defendant waived any right he had to have drug quantity determined by a jury when he pled guilty to the drug conspiracy).

27.     Samuel and Clarence Singleton also assert that the leadership role increases they received under U.S.S.G. § 3B1.1(c) violated Apprendi.  The Tenth Circuit, as well as other courts,

rejected the argument that Sentencing Guidelines are subject to the <u>Apprendi</u> rule.  <u>Jackson</u>, 240 F.3d

at 1249.  *See also* <u>United States v. Kinter</u>, 235 F.3d 192, 199-201 (4th Cir. 2000), *cert. denied*, 532

U.S. 937, 121 S.Ct. 1393 (2001) (sentencing enhancements, such as leadership role that do not

increase the statutory maximum, do not implicate <u>Apprendi</u>); <u>United States v. Fields</u>, 251 F.3d 1041,

1046 (D.C.Cir. 2001) (leadership enhancements cannot elevate a sentence above the statutory

maximum, and therefore, do not implicate <u>Apprendi</u>).

**<u>Voluntariness of Pleas</u>**

28.     Clarence Singleton and Carlton Biggers argue that their pleas were not voluntary.

They specifically contend that they were coerced into accepting a package deal involving 13 co-

defendants, some of whom were family members who faced a substantial amount of jail time if the

package plea deal were not executed.  "The longstanding test for determining the validity of a guilty

plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses

of action open to the defendant.'"  <u>United States v. Carr</u>, 80 F.3d 413, 416 (10th Cir. 1996) (*citing*

<u>Hill v. Lockhart</u>, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985)).  A valid guilty plea may not be

obtained through coercion.  <u>Osborn v. Shillinger</u>, 997 F.2d 1324, 1327 (10th Cir. 1993).  The Tenth

Circuit recognizes that:

> 'threats to prosecute or promises of leniency to third persons to
> induce guilty pleas can pose a danger of coercion' and therefore
> require special care 'to insure that the plea was in fact entered
> voluntarily and was not the product of coercion.'  Moreover, we have
> noted that 'the inclusion of such third persons can increase the
> leverage possessed by prosecutors and therefore imposes upon them
> a high standard of good faith.'  Nevertheless, we have insisted that an
> accused's choice be respected, and if he 'elects to sacrifice himself for
> such motives, that is his choice.'

Carr, 80 F.3d at 416-17 (internal citations omitted).  In Carr, the defendant alleged that his attorney and co-defendants, with their attorneys, pressured him into accepting the package plea deal.  He claimed he was "hounded, browbeaten and yelled at" in the attempt to coerce him into pleading guilty.  Id. at 417.  He was sworn at and called "stupid" when he initially did not acquiesce.  The Court concluded that "[w]hile these pressures might have been palpable to [that defendant], they did not vitiate the voluntariness of his plea; it was still his choice to make."  Id.

29.    In this case, there are no explicit pressures identified by movants that were used to coerce them into accepting the package deal.  They generally allege that family pressures negated the voluntariness of their pleas.  Here, the Court clearly followed the requirements of Fed.R.Crim.P. 11 by inquiring into the voluntariness of the pleas and by explaining and determining if each movant understood the nature of the charges including the possible penalties, the agreement of 210 months incarceration, "contingen[t] on 13 defendants" entering pleas, the court's role in sentencing and applying the sentencing guidelines, and the defendants' rights to plead not guilty and proceed to a jury trial.  The transcripts of the plea hearings confirm that the Court carefully determined whether the pleas were voluntarily entered and whether the movants understood the consequences of their pleas.

30.    Based on these circumstances, the Court determines that Clarence Singleton's and Carlton Biggers' acceptance of the plea agreements were knowing and voluntary.  There simply is no evidence that the package deal was improperly coercive.  For example, the movants provide no indication that the government acted in bad faith when it prosecuted some of the movants' relatives or that the government's threats to prosecute their relatives were empty.  A grand jury indicted the movants and the co-defendant relatives, and there is no showing that the government lacked probable

13

cause to charge these family members with the offenses enumerated in the indictment. <u>Miles</u>, 61 F.3d at 1468-69.

### Ineffective Assistance of Counsel

31.    Clarence Singleton and Carlton Biggers both argue their attorneys provided ineffective assistance of counsel by encouraging them to accept plea agreements agreeing to an incarceration period of 210 months when the Presentence Reports revealed a lower criminal history category than that discussed at the plea hearing.  Both claim their attorneys should have waited to review the Presentence Report before encouraging acceptance of the plea agreements.  They also contend that, at sentencing, their attorneys failed to urge a lower sentence based on the Presentence Reports.

32.    Although the two movants provide identical briefing on this issue, their circumstances are different and are discussed separately.  Carlton Biggers agreed to a sentence of 210 months.  His plea agreement indicates that the government's best calculation of his criminal history category was III.  The Presentence Report initially showed a total criminal history of 5 points that established a criminal history category of III.  After objections, it was revised to a criminal history category of II, resulting in a guideline imprisonment range of 151-188 months imprisonment.  [Doc. 9, Ex. 12., Addendum.]  At Mr. Biggers' sentencing, his attorney acknowledged that he had agreed to 210 months and was in no position to request a different sentence.  [Doc. 1, Ex. 3, p. 30.]  Counsel also informed the Court that the addendum to the Presentence Report corrected his criminal history category from III to II.  [<u>Id.</u>]  The government pointed out that he was convicted of two prior crimes and could have been given a life term under the statute, and that his attorney negotiated a lower sentence than the maximum possible.  [<u>Id.</u>, p. 36.]

33. At Clarence Singleton's plea hearing, he agreed to a sentence of 210 months, based on the government's best calculation that his criminal history category was III. The later prepared Presentence Report indicates that the criminal history category actually was I but that pursuant to the Rule 11(e)(1)(C) stipulation of the plea agreement, his criminal history category was III. The guideline imprisonment range for a criminal history category of I with a total offense level of 35 was 168-210 months. For a criminal history category of III, the range was 210 to 262 months.

34. Both movants are correct that a plea agreement is a contract between the government and the defendant, and that as such, the plea agreement is governed by contract principles. In examining the parties' obligations under a plea agreement, the court looks to the express language and construes any ambiguities against the government as drafter. United States v. Brye, 146 F.3d 1207, 1210 (10th Cir.1998). As with all contracts, plea agreements are interpreted by giving effect to their plain and unambiguous language, giving due consideration to a defendant's reasonable understanding at the time. United States v. Bunner, 134 F.3d 1000, 1003 (10th Cir.), *cert. denied*, 525 U.S. 830, 119 S.Ct. 81 (1998).

35. Here, when the movants entered their pleas, they understood that their sentences would be 210 months and that the government had calculated their criminal history categories as stated. The express language is unambiguous, and the movants testified during the plea hearings that they understood the confinement period to which they agreed. Therefore, under Strickland v. Washington, 466 U.S. 668, 687-88 (1984), 104 S.Ct. 2052, their attorneys' representation did not fall below an objective standard of reasonableness. Moreover, in determining whether counsel's conduct was objectively reasonable, the courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Under

these circumstances, Clarence Singleton and Carlton Biggers have failed to satisfy their burden of proof under <u>Strickland</u>.

36.     The argument that counsel should have reviewed the Presentence Report before encouraging the movants to accept the plea agreements also is unavailing. It is not possible to gather the information contained in the Presentence Report, which requires interviewing the defendant about prior criminal conduct, until after the defendant has been adjudicated guilty or has entered a guilty plea. As a practical matter, therefore, counsel could not have reviewed the Presentence Report before advising their clients to accept or reject the plea agreements. For the same reasons, Clarence Singleton's argument that the Court committed plain error by accepting the plea agreement before requesting the Presentence Report is rejected.

37.     Samuel Singleton also raises ineffective assistance of counsel claims. He contends that his attorney failed to object to the two point enhancement for a leadership role in the Presentence Report and that the two point increase was not part of the Plea Agreement. He also claims that the Court improperly limited his defense attorney's compensation during the plea withdraw hearing which denied him effective assistance of counsel.

38.     First, the Plea Agreement signed by Samuel Singleton on February 20, 1998, states that "[t]he United States and the Defendant have also made AN AGREEMENT pursuant to 11(e)(1)(C), that a two (2) point upward adjustment for Defendant's role as organizer, leader . . . are applicable . . . ." [Doc. 9, Ex. 5, p. 3.] Moreover, to the extent that Mr. Singleton again is urging that sentencing enhancements implicate <u>Apprendi</u>, this argument has already been rejected. It would not have been objectively reasonable for counsel to have raised this losing argument. <u>Quary</u>, 2002

WL 226387 at *4 ("counsel's failure to raise a losing argument does not amount to ineffective assistance of counsel, but rather falls squarely within the discretion afforded to counsel.")

39.     Samuel Singleton's argument that the Court restricted the compensation allotted to his defense counsel is unsupported and must be rejected.  Mr. Singleton claims that "the Court declared that $7,600 is the limit that would be spent on Petitioner's defense," citing the transcript of the April 23, 1998 motion hearing at pages 53-54.  [Doc. 2, pp. 20-21.]  On page 53, Samuel Singleton's attorney requested that the Court seriously consider her motion to withdraw.  The Court noted several problems with counsel's request – first, that she had done an excellent job and second, that she had spent substantial time, effort and money in familiarizing herself with the case that had a trial setting several months later.  The Court proceeded to explain that "at a point where we've spent substantially over $100,000 on preparing a defense team, and they've explored virtually every aspect of this case in depth, I'm very reluctant to grant motions to start over with new counsel."  [Doc. 9, Ex. 8, pp. 53-54.]  Nothing on the pages cited by Mr. Singleton indicates that he was limited to $7,600 or to any set sum.  Therefore, his claim that he was denied effective assistance of counsel by the Court is dismissed, without further discussion.

## Search and Seizure

40.     All three movants claim that their First, Fifth and Sixth Amendment rights were violated when government agents searched their cells and seized legal materials that were outside the scope of the search warrant.  Both parties agree that in June 1997, the government obtained a search warrant to search the movants' cells and seized a number of items, including allegedly privileged attorney-client materials.  The movants argue that the jailhouse search was unlawful and distracted their counsel from the merits of their defense by forcing them to pursue remedies regarding the

search.  The search and seizure supposedly reduced the movants' confidence in their attorneys and "rendered them unwilling to take notes or communicate in writing with their lawyers."  Although movants admit they entered into a guilty plea, they assert that "the unlawful search was manifest and caused [them] harm."

41.     The government responds that it sought a search warrant to seize evidence that the defendants allegedly were conspiring to avoid conviction by not pleading guilty.  [Doc. 9, p. 15.]  The trial team of prosecutors was shielded from access to privileged information by having a separate team of federal prosecutors and agents review all seized items.  In August 1997, Chief Magistrate Judge William Deaton, acting as special master, reviewed the documents seized and conducted an evidentiary hearing.  The Court concluded that the trial team for the United States was shielded from any privileged information and that at no time did the prosecution use any privileged information or fruits of privileged information against Defendants.  [Doc. 9, p. 15.]  The movants provide no evidence to the contrary other than to make conclusory allegations that they were harmed.

42.     The movants' First Amendment claim fails because inmates have no reasonable expectation of privacy in their cells.  Matthews v. Meeuwisse, 2001 WL 15666 at *1 (S.D.N.Y. Jan. 8, 2001) (*citing* Hudson v. Palmer, 468 U.S. 517, 526-28 (1984)).

43.     To the extent that the movants claim that their Fifth Amendment right to be free from self incrimination was violated by the search and seizure, the movants have provided no evidence that the alleged seizure of privileged information resulted in their self incrimination.  Thus, this claim will be dismissed.

44.     With respect to the Sixth Amendment claim, the Tenth Circuit, in Shillinger v. Haworth, held that because a prosecutor's intentional intrusion into the attorney-client relationship

constitutes a direct interference with the Sixth Amendment rights of a defendant, such intrusion, absent a countervailing state interest, amounts to a *per se* violation of the Sixth Amendment. Shillinger, 70 F.3d 1132, 1142 (10th Cir. 1995).  A prejudicial effect on the reliability of the trial process will be presumed unless the government has a legitimate justification for the intrusion.  Id. Moreover, prejudice is so likely under these circumstances, that a case by case into prejudice is unnecessary.  Id.

45.     Here, the government set forth a legitimate justification for the search and seizure of materials from the movants' cells.  Moreover, the government asserted that its trial team did not review any privileged materials or use such items against the movants, and the Court agreed. *See* United States v. Robinson, 1996 WL 506498 at *11 (6th Cir. Sept. 5, 1996) (in absence of evidence to the contrary, the district court is entitled to credit the government's assertion that it did not view any privileged materials during the search), *cert. denied*, 520 U.S. 1181, 117 S.Ct. 1459 (1997).  The movants provide no evidence that seized information was used against their interests and make no argument that the seizures of legal materials  induced them to enter into guilty pleas.  Indeed, they do not identify any materials removed from their cells that appear to have been privileged.  Only Samuel Singleton lists items that he believes were seized including Court Orders and Transcripts of Court Proceedings, that would not be privileged.  [Doc. 2, p. 17.]  Because the government provided a legitimate reason for the search and seizure of privileged information, the movants must demonstrate prejudice.  Each movant continued his effort to defend this litigation, and none appear to have been impeded in this pursuit by the search and seizure. *See* Sims v. Miller, 5 Fed. Appx. 825, 828, 2001 WL 201946 at *1 (10th Cir. Feb. 28, 2001) (search of plaintiff's cell and seizure of legal

papers did not state constitutional deprivation where the plaintiff inmate continued prosecution of his case).  Therefore, the Sixth Amendment claim is rejected.

## Evidentiary Hearing

46.     Under § 2255, a moving has a right to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  Because the Court has decided that the movants' claims are conclusory and unsupported by the record, the Court declines to set a hearing under § 2255.

## Recommended Disposition

That the § 2255 Motions filed by Samuel Singleton, Carlton Biggers and Clarence Singleton (Doc. 1, CIV No. 01-1084; Doc. 1, CIV No. 01-1197; Doc. 1, CIV No. 01-1215, consolidated under CIV No. 01-1084) be denied and that the case be dismissed with prejudice.

Lorenzo F. Garcia
United States Magistrate Judge